UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

| Case No. | 2:13-CR-00674-CAS | | Date | August 13, 2015 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine M. Jeang | Not Present | Michael Azat, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 2) ROBERT JACKSON | NOT | X | | AMY JACKS | NOT | | X |

| Proceedings: | **(In Chambers)** DEFENDANT ROBERT JACKSON'S *EX PARTE* APPLICATION FOR A COURT ORDER FURTHER DETAILING THE SCOPE AND CONDITIONS OF THE GOVERNMENT'S MENTAL HEALTH EXAMINATION (Dkt. No. 203, filed July 30, 2015) |
|---|---|

### I.   INTRODUCTION AND BACKGROUND

Defendant Robert Jackson ("Jackson"), a former Marine, is charged with (1) conspiracy to defraud the United States with respect to claims, and (2) aiding and abetting the presentation of false, fictitious, or fraudulent claims. The government alleges that Jackson and his co-conspirators presented fake travel and lodging receipts and otherwise falsified forms requesting reimbursement from the government. A jury trial is scheduled to begin on February 9, 2016.

To convict Jackson of the aiding and abetting charge, the government must show that Jackson "had the specific intent to facilitate the commission of a crime by someone else." United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005). At trial, Jackson intends to offer expert testimony supporting the inference that he could not have formed that *mens rea* at the time of the charged offenses.[1] Specifically, Jackson has given notice of his intent to call Dr.

---

[1] See United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997) (en banc) (permitting "testimony supporting an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily flow from the testimony").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Olga Tuller, a psychologist, who will testify that Jackson experienced a Traumatic Brain Injury ("TBI") while in combat in Iraq, and developed combat-related Post-Traumatic Stress Disorder ("PTSD"), which medical conditions resulted in "physical, cognitive, and emotional changes" at the time of the charged offenses. Dkt. No. 122 at 1–2. Dr. Tuller will also opine that Jackson's symptoms "were magnified as a result of medications prescribed to address depression, anxiety, sleep disorders, and pain management," and that Jackson continues to experience effects from his TBI and PTSD. Id. at 2.

Dr. Tuller was appointed before Jackson's indictment to assist defense counsel in preparing an application for this district's Conviction and Sentence Alternatives Program. Jacks Decl. ¶ 9. Jackson has represented that Dr. Tuller's testimony will be "based on her review of Mr. Jackson's medical records, her review of relevant case materials and her education, training and experience." Dkt. No. 122 at 2; Dkt. No. 147 at 2. On October 10, 2014, Jackson produced to the government a "Confidential Forensic Evaluation," prepared by Dr. Tuller, which indicates that Dr. Tuller interviewed Jackson on April 27, 2013, for three hours. See Dkt. No. 182-1 ¶¶ 3–4 & Ex. B. Dr. Tuller did not question Jackson "about the facts of the case or his interrogation with law enforcement," and "has not administered any personality testing" on Jackson. Jacks Decl. ¶¶ 11–12; see also Dkt. No. 182-1 Ex. B. at 2. On June 10, 2015, defense counsel told the government that Dr. Tuller "would not base her testimony on her interview or meetings with defendant." Dkt. No. 182-1 ¶ 6.

On June 23, 2015, the government moved *ex parte* to exclude Dr. Tuller's testimony, or to compel Jackson to submit to an evaluation by a government-retained expert. See Dkt. No. 182. The government largely relied on a declaration by its intended expert, Dr. Marc A. Cohen, who averred that a one-on-one psychiatric examination was necessary to produce a reliable forensic evaluation. See Dkt. No. 182-2 ¶¶ 3–6. Dr. Cohen declared that his sixteen-hour examination would consist "of a psychiatric interview and the administration of the Personality Assessment Inventory ['PAI'], a psychological test." Id. ¶ 10. Jackson opposed that motion, arguing that fairness did not require a government examination because (1) Dr. Tuller's interview with Jackson was not conducted for the purpose of evaluating Jackson's mental state at the time of the alleged crime, and (2) existing medical records would be sufficient for the government to attempt to rebut Dr. Tuller's testimony. See id. at 6–9.

On July 8, 2015, the Court denied the government's request to preclude Dr. Tuller from testifying, but granted its alternative request to have Dr. Cohen examine Jackson for not more than sixteen hours over the course of two days. See Dkt. No. 191. The Court reasoned that, notwithstanding Jackson's contention that her testimony would only be based on other sources, "Dr. Tuller's personal interactions with Jackson have likely shaped some of her impressions and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

conclusions." Id. at 3. The Court therefore found "that the government should have an equal opportunity to evaluate Jackson as a matter of fairness and in the interests of justice." Id.

The government subsequently represented that Dr. Cohen would question Jackson "about the facts of the charged offenses and his statements to law enforcement," and would administer the PAI. Jacks Decl. ¶ 10. On July 30, 2015, Jackson filed an *ex parte* application for an order limiting the scope of Dr. Cohen's examination. Dkt. No. 203 ("App."). The government filed an opposition on August 4, 2015. Dkt. No. 205 ("Opp'n"). Having considered the parties' arguments, the Court finds and concludes as follows.[2]

## II.  DISCUSSION

### A.  Legal Background

Federal Rule of Criminal Procedure 12.2(b) provides in relevant part: "If a defendant intends to introduce expert evidence relating to a mental disease or any other mental condition of the defendant bearing on . . . the issue of guilt . . . the defendant must . . . notify an attorney for the government in writing of this intention." Rule 12.2(c)(1)(B) states: "If the defendant provides notice under Rule 12.2(b), the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Importantly, however:

> No statement made by a defendant in the course of any examination conducted under [Rule 12.2] (whether conducted with or without the defendant's consent), no testimony by the expert based on the

---

[2] Jackson did not, in his opposition to the government's prior *ex parte* application, argue that the request for a rebuttal examination should be denied or limited because of his Fifth or Sixth Amendment rights. The government contends that Jackson's application should be disregarded as an improper motion for reconsideration because he could have raised his current arguments in that prior brief. See Opp'n at 5–7 (citing C.D. Cal. Local Rule 7-18). Although at least some of Jackson's arguments could have been raised earlier, to the extent the instant application could be construed as a motion for reconsideration, the Court exercises its discretion to consider its merits. See Daghlian v. DeVry Univ., Inc., 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007 ) ("Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion."); Tibble v. Edison Int'l, No. CV 07-5359 SVW (AGRx), 2011 WL 2759927, at *3 n.8 (C.D. Cal. Aug. 22, 2011) (recognizing a district court's power to reconsider its prior order *sua sponte*) (citing Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 420 F. App'x 97, 100 (2d Cir. 2011)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

>statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:
>>(A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or
>>(B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Fed. R. Crim. P. 12.2(c)(4).

"Generally, an accused retains a Fifth Amendment right against compelled self-incrimination in the face of a court-ordered examination for psychiatric and psychological issues." United States v. Williams, 731 F. Supp. 2d 1012, 1016 (D. Haw. 2010) (citing Estelle v. Smith, 451 U.S. 454, 464–65 (1981)). "However, the United States Supreme Court has stated that where an accused has noticed a mental state defense, he waives his Fifth Amendment right and evidence from the reports of the examination that he requested may be introduced as rebuttal evidence by the prosecution." Id. (citing Buchanan v. Kentucky, 483 U.S. 402, 422–23 (1987)). Moreover, a defendant who places his sanity or mental state at issue "can be compelled to submit to psychiatric examinations" on motion by the government. United States v. Phelps, 955 F.2d 1258, 1263 (9th Cir. 1992); see also Kansas v. Cheever, 134 S. Ct. 596, 603 (2013) ("[W]here a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence.").

"[A] defendant who asserts a mental status defense lacks a Fifth Amendment right to remain silent <u>regarding the mental status that he has placed at issue</u>." Pawlyk v. Wood, 248 F.3d 815, 825 (9th Cir. 2001) (emphasis added). The resulting Fifth Amendment waiver "is not limitless; it only allows the prosecution to use the interview to provide rebuttal to the psychiatric defense." Gibbs v. Frank, 387 F.3d 268, 275 (3d Cir. 2004). This is because allowing the government's interview-based evidence to exceed that necessary to rebut the defendant's expert testimony "is tantamount to using [a defendant's] own statements, for which he has not waived his Fifth Amendment rights, against him in a criminal proceeding." Williams, 731 F. Supp. 2d at 1020. Put differently, "[w]hen a defendant raises a defense that relies on an expert examination of his mental condition, the Fifth Amendment does not protect him from being compelled to submit to a <u>similar examination</u> conducted on behalf of the prosecution or from the introduction of evidence from that examination for purposes of <u>rebutting</u> the defense." Id. at 1017 (emphasis in original) (citing Saiz v. Ortiz, 392 F.3d 1166 (10th Cir. 2004) (Hartz., J., concurring)). Such an examination should not, however, be used as

an "opportunity to examine [the defendant] as a fishing expedition for any other mental defect that may have provided a motive for the alleged crime," or to "assert diagnoses or defects other than to rebut those specifically placed at issue by the defendant." Id. at 1018, 1019.[3]

### B. Analysis

Jackson concedes that he has "arguably engaged in a limited waiver of his Fifth Amendment rights by giving notice that he intends to introduce evidence of his mental health condition." App. at 10. But he argues that the government's examination of Jackson should be strictly limited by the scope of Dr. Tuller's prior examination—which did not include questioning about the charged offenses or the administration of a formal personality test. Jackson seeks an order (1) precluding Dr. Cohen from asking Jackson about the charged crimes or his statements to law enforcement, (2) prohibiting any government expert from administering the PAI, and (3) limiting the government's examination to eight hours during the course of one day. See id. at 13–14. The Court discusses each of these requests in turn.[4]

#### 1. Questioning About Charged Crimes or Statements to Law Enforcement

First, the parties dispute whether the government's expert should be permitted to ask Jackson questions about the charged offenses and his statements to law enforcement agents, even though Dr. Tuller did not do so. Jackson contends that such questioning would exceed the scope of his Fifth Amendment waiver, whereas Dr. Cohen asserts that he cannot reliably "assess and construct [Jackson's] mental state at the time of the alleged crimes . . . without considering

---

[3]A compelled examination of this sort also implicates a defendant's Sixth Amendment right to counsel. See Powell v. Texas, 492 U.S. 680, 681 (1989) (per curiam) (holding that once a defendant has been formally charged, the government may not conduct a mental health examination of him without first informing defense counsel of what issues such examination will encompass). In this context, the Sixth Amendment ensures "consultation with counsel . . . informed about the scope and nature of the proceedings" and "aware[] of the possible uses to which [the defendant's] statement in the proceeding could be put." Buchanan, 383 U.S. at 424–25. Although Jackson cites Sixth Amendment case law, he raises no specific argument that defense counsel has not been put on notice of the intended scope and use of the rebuttal examination, and the government does not object to continuing to inform defense counsel of any changes to its intended examination protocol.

[4]The government does not oppose or has reached stipulations on additional requests, which the Court notes in the conclusion to this order. See Opp'n at 5; Azat Decl. ¶ 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

his account of the alleged crimes, including prior statements to law enforcement, wherein lie the true motives and intent of any acts." Cohen Decl. Aug, 2, 2015 ¶ 10.

The most thorough treatment of a similar issue cited by either party comes from United States v. Johnson, 383 F. Supp. 2d 1145 (N.D. Iowa 2005). There, a capital murder defendant gave notice of her "intention to rely on the evidence of mental health experts during the 'penalty phase,' if any, of her trial." Id. at 1148. The court granted the prosecution's motion for a compelled mental examination, but Johnson declared her intention to invoke her Fifth Amendment privilege "if the government experts attempted to ask questions of her concerning her involvement in the murders." Id. at 1149. Johnson argued that she had told her own experts "not to question her regarding her alleged commission of the murders or her mental state at the time of the murders," and that she planned to offer mental health evidence only as a general mitigating factor in the penalty phase, rather than as a defense to guilt or as an "offense-specific" mitigating factor. Id. Noting that Johnson had waived her Fifth Amendment rights to some extent and that Rule 12.2(c) protects against the non-rebuttal use of statements elicited through a compelled examination, the court framed the relevant issue as whether a defendant may "assert her right against self-incrimination <u>as to questions concerning details of, or her involvement in, the offenses charged</u>, notwithstanding a general waiver by putting her mental condition at issue." Id. at 1152 (emphasis in original).

Surveying case law, the Johnson court first noted that federal decisions suggest that the Fifth Amendment waiver effected by a notice of intent to introduce mental health evidence is broad,[5] but that few cases specifically discuss whether rebuttal experts can ask questions about the charged offenses. Id. at 1153–54. After discussing conflicting state court decisions on that issue, the Johnson court concluded that the right approach would "balance the[] competing interests of the defendant's right against self-incrimination and the government's interest in the defendant's statements about the charged crimes where necessary to mount an adequate rebuttal." Id. at 1160. The court then reasoned that where a defendant relies on an offense-specific mitigating factor, such as a lack of capacity to appreciate the wrongfulness of her conduct, a meaningful rebuttal likely cannot be achieved "without the opportunity for the government's experts to ask offense-specific questions; hence, the defendant's waiver of the Fifth Amendment right against self-incrimination necessarily includes a waiver of the right to refuse to answer offense-specific questions." Id. at 1161. But with regard to non-offense-specific mitigating factors such as a "post-offense mental condition" or a "long-standing mental

---

[5] See, e.g., United States v. Sampson, 335 F. Supp. 2d 166, 247 (D. Mass. 2004) ("The defendant could not present expert testimony on his mental condition and yet refuse, on Fifth Amendment grounds, to answer questions put to him by the government's experts.").

condition, which may have no specific impact on the thinking or conduct of the defendant at the time of the offense," the Johnson court opined that "allowing the government's experts to ask offense-specific questions" might "exceed the scope of what is necessary for the government's experts to rebut the defendant's mental condition evidence." Id. at 1162. In Johnson's case, the court concluded, there was no need to ask offense-specific questions because her mental health evidence was solely intended to support non-offense-specific mitigating factors in the penalty phase of her trial. Id. at 1164–65.

Jackson, unlike the defendant in Johnson, has indicated his intent to tender his mental state at the time of the time of the alleged crimes as a defense to guilt. For this reason, as suggested by the Johnson court's discussion of offense-specific mitigating factors, the Court concludes that the government's rebuttal expert should not be barred entirely from asking questions concerning the alleged offense. Cf. Estelle, 451 U.S. at 465 (explaining that where a defendant introduces expert evidence on a mental state defense, "his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case"); United States v. Leonard, 609 F.2d 1163, 1165 (5th Cir. 1980) ("In many cases, psychiatrists would not be able to obtain reliable testimony [about an insanity defense] unless they were free to inquire into the prior conduct of the defendant, including his participation in the criminal activity with which he is charged."). Moreover, Jackson's Fifth Amendment rights will be protected by the Court's duty, under Rule 12.2(c)(4), not to admit at trial any statement made in the course of Jackson's examination, or any derivative evidence, except that which rebuts evidence Jackson himself places at issue during trial. See Fed. R. Crim. P. 12.2.(c)(4) advisory committee's note to 1975 enactment (explaining that the purpose of the rule "is to secure the defendant's fifth amendment right against self-incrimination"). Accordingly, the Court DENIES Jackson's *ex parte* application insofar as he seeks to bar Dr. Cohen from asking him questions touching on the alleged offenses, so long as those questions directly relate to defendant's ability to form the requisite *mens rea* at the time. Nevertheless, Dr. Cohen may not ask questions about Jackson's role in the alleged offense that are not reasonably related to the *mens rea* issue. Nor may Dr. Cohen use the rebuttal examination to seek out other "mental defect[s] that may have provided a motive for the alleged crime," and that have not been "specifically placed at issue by" Jackson. See Williams at 1018–19.

Further, the Court is not persuaded that it is reasonably necessary for the government's expert to ask questions about Jackson's statements to law enforcement in order to assess Jackson's mental health at the time of the alleged crimes. The government cites no legal authority for allowing such questioning, and supports the need for it only with Dr. Cohen's conclusory declaration testimony that his task "cannot be reliably accomplished without considering [Jackson's] account of the alleged crimes, including prior statements to law enforcement." Cohen Decl. ¶ 10. Accordingly, the Court GRANTS Jackson's *ex parte*

application insofar as he seeks to bar Dr. Cohen from asking him questions about his prior statements to law enforcement agents.

    2.    The PAI Test

As Jackson points out, courts have limited the types of testing conducted in rebuttal examinations based on the scope of the mental health evidence proffered by the defendant. For example, in United States v. Taylor, 320 F. Supp. 2d 790 (N.D. Ind. 2004), the defendant sought to introduce "expert evidence regarding [his] developmental history and mental condition relating to substance abuse during the sentencing phase," and was ordered to submit to a rebuttal examination. Id. at 791. The defendant subsequently objected to four tests the government intended to use—including the PAI—on the ground that those tests were "designed to indicate personality disorders and mental conditions . . . not mental condition[s] related to substance abuse," and therefore exceeded the scope of any Fifth Amendment waiver. Id. at 794. The court agreed, concluding that the government could use such tests "only to the extent that the tests contain testing scales for substance abuse," and that the prosecution should be "barred from introducing any materials that are outside the scope of mental health testing as it relates to substance abuse." Id.; see also Williams, 731 F. Supp. 2d at 1017–20 (holding inadmissible results of a test employed to diagnose psychopathy and Antisocial Personality Disorder because that test addressed factors not placed at issue by defendant's evidence of borderline intellectual function and brain damage); Centeno v. Superior Court, 117 Cal. App. 4th 30, 45 (2004) (holding that compelled mental examinations are "permissible only to the extent they are reasonably related to the determination of the existence of the mental condition raised," and that the trial court must "determine whether the proposed tests are reasonably related to the . . . issue tendered by the defendant").

As stated, Dr. Tuller did not administer the PAI—which consists of hundreds of prompts that the subject rates as true or false—or any other personality test. Jackson contends, and the government does not contest, that the PAI "does not test for cognitive functioning or impairment," and is instead "used to assess an individual's personality traits." App. at 12–13. Setting aside the parties' dispute over the PAI's general usefulness, the Court fails to see how such a broad personality test is within the scope of the issues raised by defendant's notice of intended expert testimony. See Williams, 731 F. Supp. 2d at 1020 ("[T]he Government's rebuttal testimony must be limited in scope to that which directly rebuts [the asserted defense] and which is based upon expert examinations that parallel the exploration of the examinations conducted by defense experts."). For this reason, the Court GRANTS Jackson's application insofar as he seeks to preclude the government's expert from administering the PAI.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

3.   Length of the Examination

Because Dr. Cohen will not be permitted to administer the PAI and because Dr. Tuller's examination lasted only three hours, the Court agrees with Jackson that the government's requested sixteen hours of examination is not reasonably necessary. Accordingly, the Court GRANTS Jackson's application insofar as he seeks to limit the prosecution's rebuttal expert examination to not more than eight hours conducted over the course of a single day.

**III.   CONCLUSION**

In accordance with the foregoing, Jackson's *ex parte* application is **GRANTED IN PART** and **DENIED IN PART**. The government's expert is not categorically barred from asking questions relating to the alleged offenses or Jackson's statements to law enforcement; however, he may do so only to the extent those questions are reasonably related to the mental conditions Jackson has placed at issue through his noticed expert testimony. Dr. Cohen may not ask Jackson about his statements to law enforcement officials, and may not administer the PAI or any similar personality test. And the compelled examination may last no more than eight hours over a single day. Finally, because the government does not oppose or has reached a stipulation on the following requests, the government must: (1) notify Jackson in writing at least seventy-two hours prior to the examination of any changes in its expert's testing protocol, and (2) provide the defense with a recording of the examination within one week of the examination.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |