UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

| Case No. | 2:13-CR-00674-CAS | | Date | August 22, 2016 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Not Present | Damaris Diaz, Not Present<br>Jennifer Weinhold, Not Present<br>William Crowfoot, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 2) ROBERT JACKSON | NOT | | X | AMY JACKS | NOT | X | |
| 3) FRANCISCO SALAS | NOT | | X | AARON MEYER | NOT | | X |

| Proceedings: | (IN CHAMBERS) - DEFENDANT ROBERT JACKSON'S MOTION *IN LIMINE* TO ADMIT LAY WITNESS TESTIMONY RELEVANT TO DEFENDANT ROBERT JACKSON'S MENTAL CONDITION (Dkt. 301, filed August 14, 2016) |
|---|---|

## I.    INTRODUCTION & BACKGROUND

Defendants Robert Jackson ("defendant Jackson") and Francisco Salas ("defendant Salas") are each charged with one count of conspiracy to defraud the United States with respect to claims (Count One), in violation of 18 U.S.C. § 286; and eleven counts of submitting false claims to the United States (with Counts Fourteen through Twenty-Four against defendant Jackson, and Counts Twenty-Five through Thirty-Five against defendant Salas), in violation of 18 U.S.C. § 287. Defendants were lance corporals in the United States Marine Corps Forces Reserve ("USMCR") and assigned to the Third Naval Gunfire Liaison Company ("ANGLICO") at Terminal Island in San Pedro, California. In brief, this case involves an alleged conspiracy to submit false claims for per diem entitlements and reimbursements for time spent on active duty while on medical hold at the Terminal Island USMCR base from 2007 through 2009.

On August 9, 2016, a jury trial began, and on August 14, 2016, while trial was ongoing, defendant Jackson filed the instant motion *in limine* to admit lay witness testimony relevant to defendant Jackson's mental condition. Dkt. 301 ("Motion"). On August 15, 2016, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

government filed an opposition to the instant motion. Dkt. 302 ("Opp'n"). Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   DISCUSSION & CONCLUSION

In this case, defendant Jackson is, in effect, presenting a defense of diminished capacity, which "is directly concerned with whether the defendant possessed *the ability to attain the culpable state of mind which defines the crime*." U.S. v. Twine, 853 F.2d 676, 678 (9th Cir. 1988) (emphasis added). While "psychological or psychiatric evidence that negates the essential element of specific intent can be admissible," the admission of such evidence "will depend upon whether the defendant clearly demonstrates how such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse.' " United States v. Brown, 326 F.3d 1143, 1147 (10th Cir. 2003) (citation omitted). "Because there is a risk that such evidence will mislead or confuse the jury, district courts must carefully scrutinize proposed psychiatric evidence to determine whether the evidence rests upon a legally acceptable theory for negating intent." Id.

Through the instant motion, defendant Jackson seeks to admit lay testimony from "Marines and other friends" regarding "their observations of his behavior that are relevant to his mental condition at the time of the charged offenses." Motion at 5. The anticipated testimony consists of the witnesses' observation of Jackson in the time before and after he suffered a traumatic brain injury ("TBI"), including testimony stating that, following his TBI, Jackson (1) would "act in an extremely unreliable manner, contrary to [his] pre-TBI conduct," and "frequently experienced problems controlling his emotions," Jacks Decl. at ¶ 4(a) (anticipated testimony of Kevin Rea); (2) would go 'bezerk' after being repeatedly asked by other Marines to recount the circumstances of being shot," and would "show[] up late to work at 3rd ANGLICO, lacking motivation, and appearing 'like a zombie,' " id. at ¶ 4(b) (anticipated testimony of Alex Dhue); (3) would complain that he "could not focus on his work" and that " 'his thinking was cloudy,' " id. at ¶ 4(c) (anticipated testimony of Michael Sisson); (5) would "appear[] to be tired all the time," complain "that he had nightmares," and "would start a conversation, stop, completely lose track of what he was talking about and be unable to remember the conversation or finish it," id. at ¶ 4(d) (anticipated testimony of Lawrence Nunez); and (5) had "weird mood swings" and "would frequently 'zone out,' " id. at ¶ 4(e) (anticipated testimony of Lumey Witron).

In opposition to the instant motion, the government contends, and the Court agrees, that "[i]t is entirely unclear how any of [the witnesses' proffered] observations relate to—or in any way negate—the specific intent at issue here: facilitating the commission of the crime [submitting false claims to the United States] by someone else." Opp'n at 4 (citing U.S. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

'O'

Garcia, 400 F. 3d 816, 819 (9th Cir. 2005)). Instead, there is a substantial risk that the proffered testimony, as summarized by defendant's counsel in her declaration, will mislead or confuse the jury regarding defendant's diminished capacity defense—in particular, that the jury may confuse defendant's diminished capacity defense with that of justification or excuse. Of course, the defense of diminished capacity—unlike the defense of insanity—"is not an excuse."[1] Twine, 853 F.2d at 678.

Accordingly, because the Court finds that the proffered lay witness testimony offers little probative value as to whether defendant could form the requisite intent here, and in light of the potential for confusing the jury regarding the nature of defendant's diminished capacity defense, the Court **DENIES** defendant's motion *in limine* to the extent it seeks to admit the lay witness testimony of defendant's "fellow Marines and other friends," including Kevin Rea, Alex Dhue, Michael Sisson, Lawrence Nunez, and Lumey Witron.[2] See also U.S. v. Rice, 458 Fed. App'x.

---

[1] Defendant's reliance upon United States v. Goodman, 633 F.3d 963 (10th Cir. 2011) is misplaced. In that case, the defendant, who was charged with robbery, raised the affirmative defense of insanity, id. at 965, which—unlike the defense of diminished capacity—is presented to justify or excuse conduct that is otherwise unlawful on the ground that the defendant "was unable to appreciate the nature and quality or the wrongfulness of his acts." See 18 U.S.C. § 17; see also Twine, 853 F.2d at 678; U.S. v. Frisbee, 623 F. Supp. 1217, 1221 n. 2 (N.D. Cal. 1985).

[2] During a line of questioning at trial, counsel for defendant Jackson asked the government's expert witness, Dr. Cohen, whether statements of a patient's friends and family members may be helpful to a diagnosing physician in his or her attempt to assess whether the patient was suffering symptoms of PTSD or TBI. Dr. Cohen acknowledged that in certain circumstances, such testimony may be "one additional factor" that one might consider in attempting to "reconstruct [the patient's] mental state over time." Dr. Cohen stressed, however, that such testimony would ideally be elicited from individuals who do not have a vested interest "in the outcome of whatever the proceeding might be." To the extent to which the interviewees are aware of how their testimony might be used, Dr. Cohen suggested that the reliability of testimony elicited from these subjects may be suspect. In contrast, Dr. Cohen explained that in a "forensic analysis" or "clinical setting," such concerns may be allayed, and it may be appropriate to receive the patient's consent to contact individuals who have observed the patient in order to get a "better sense of how [the patient is] functioning." The Court notes that such testimony does not inform a different result here. Even if testimony of plaintiff's friends and fellow Marines—assuming such testimony bears the indices of reliability discussed by Dr. Cohen—may be helpful to a medical professional in his or her attempt to diagnose PTSD or


UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES - GENERAL

'O'

652, 653 (9th Cir. 2011) ("The evidence Rice seeks to proffer . . . is not relevant to negate the intent element of the charged crime.  It is relevant as an excuse or justification for his conduct, but this is not a permissible use of evidence bearing on a defendant's diminished capacity.  Because Rice's evidence of Post Traumatic Stress Disorder (PTSD) and resulting adrenaline addiction does nothing to negate the element of an 'intent to view' child pornography, the district court's error precluding Rice's diminished capacity defense was harmless.").

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

cc:  Pretrial Services

---

discern whether a TBI occurred, this does not justify the elicitation of the testimony proffered here.  The government here does not dispute the propriety of plaintiff's PTSD or TBI diagnoses, but rather argues that any such diagnoses do not preclude defendant Jackson from forming the requisite intent to commit the crimes charged here.  Thus, any lay testimony that *may* have informed a medical professional's diagnosis years ago is irrelevant here, where the jury is tasked with deciding whether, based upon defendant's undisputed diagnosis, defendant could nonetheless knowingly submit false claims to the government and take part in a conspiracy regarding the submission of such claims.