UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL    'O'**

| Case No. | 2:13-cr-00674-CAS | | Date | November 28, 2016 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |
| Catherine Jeang | | Not Present | | Damaris Diaz, Not Present<br>Jennifer Weinhold, Not Present |
| *Deputy Clerk* | | *Court Reporter/Recorder, Tape No.* | | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | Appt | Ret |
|---|---|---|---|---|---|---|---|
| 2) Robert Jackson | Not | | X | 2) Amy Jacks | Not | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL (Filed October 10, 2016, Dkt. 344)

## I.    INTRODUCTION

On September 20, 2013, defendant Robert Jackson was charged in a grand jury indictment with (1) conspiracy to defraud the United States with respect to claims through the submission of fraudulent travel reimbursement claims; and (2) eleven counts of aiding and abetting the presentation of false, fictitious, or fraudulent claims. Dkt. 1.

On August 22, 2016, after a jury trial of both Jackson and co-defendant Francisco Salas, Jackson was convicted of the conspiracy charge and four counts of aiding and abetting the submission of false claims. Dkt. 328. The jury acquitted Jackson of the remaining seven counts. Id.

On October 11, 2016, Jackson filed a motion for judgment of acquittal notwithstanding the verdict, pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"), and for a new trial, pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). Dkt. 344. On October 27, 2016, the Government filed an opposition. Dkt. 354.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL                     'O'**

## II.   BACKGROUND

On December 19, 2006, Jackson, a Marine deployed in Iraq, suffered a traumatic brain injury ("TBI") after being shot in the head, losing consciousness, and falling from atop a wall.  When he returned to the United States, Jackson remained a reservist in the Marine Corps, where was diagnosed with Post-Traumatic Stress Disorder ("PTSD") and permitted to travel for his medical care.  Jackson was assigned to a Marine Corps unit called 3rd Anglico.  Marines who are permitted to travel for their own medical treatment may seek reimbursement for certain travel-related expenses through the administrative section of their command ("the S-1") and Jackson worked with 3rd Anglico's S-1 to submit travel reimbursement vouchers.  In 3rd Anglico's S-1, a senior enlisted Marine named Bladimir Flores was responsible for assisting Marines with their travel vouchers. After a travel voucher has been prepared, signed, and submitted for reimbursement, the Defense Finance and Accounting Service ("DFAS") directly deposits the reimbursement amount into the Marine's bank account.  The Government has charged Flores with leading a conspiracy to submit false travel claims.[1]

Evidence at trial demonstrated that travel reimbursement vouchers in Jackson's name were submitted to DFAS by Flores based on falsified receipts for hotel stays that never occurred.  Jackson was convicted of aiding and abetting the submission of four falsified travel vouchers in 2009 for amounts between $4,640 and $5,655.

Several other Marines have also been convicted for crimes arising out of the travel voucher conspiracy allegedly led by Flores.  During trial, the jury heard from Marines who had already been convicted of conspiring with Flores.  Those Marines explained that they were aware that Flores was submitting false travel vouchers on their behalf and that they paid Flores a portion of the travel reimbursements they received as a kickback.

Jackson's defense throughout trial was that he was not among the group of Marines who knew what Flores was allegedly doing.  Jackson argued that he was unaware that Flores was submitting false travel vouchers on his behalf and that he suffered from diminished capacity arising out of his TBI and PTSD.  In support of his defense, Jackson offered testimony from other Marines for whom Flores submitted false travel vouchers without their knowledge.  Jackson also offered expert testimony of Dr. Dorene Opava-Rutter and Dr. Olga Tuller regarding the effects of TBI and PTSD.  Jackson also offered

---

[1] Flores, who is named as a co-defendant in the grand jury's indictment of Jackson, is at large and has yet to be arrested.

testimony of fellow Marines who were with him in Ramadi, Iraq when Jackson was shot in the head by an Iraqi sniper.

In rebuttal to Jackson's diminished capacity defense, the Government called Dr. Marc Cohen. Cohen testified that Jackson had good judgment and the mental capacity to form the requisite intent.

### III.    MOTION FOR JUDGMENT OF ACQUITTAL

#### A.    Legal Standard

Pursuant to Rule 29, defendant may file a motion for a judgment of acquittal after a jury verdict. Judgment of acquittal is warranted if the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(a). "The evidence is sufficient to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Magallon-Jimenez, 219 F.3d 1109, 1112 (9th Cir. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Further, "all reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201-02 (9th Cir. 2000).

#### B.    Discussion

Jackson contends that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he had the requisite mens rea. The jury heard evidence that some Marines knowingly entered into an agreement with Flores to submit false travel claims and that other Marines did not know Flores was submitting false travel claims on their behalf. The jury heard testimony from Marines in each group. Jackson contends that there was insufficient evidence of Jackson's mens rea to conclude that Jackson was among the Marines in the know.

For the aiding and abetting charges, the government is required to establish beyond a reasonable doubt that Jackson "had the specific intent to facilitate the commission of a crime by someone else." United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005). For the conspiracy charge, the Government was required to prove beyond a reasonable doubt that Jackson entered into an agreement to obtain payment of a false claim and which Jackson knew to be false at the time. See United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996). "An inference of criminal intent can be drawn from circumstantial evidence." United States v. Kaplan, 554 F.2d 958, 964 (9th Cir. 1977).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**　　　　　　'O'

　　　　The Government presented multiple forms of circumstantial evidence that Jackson knew Flores was processing false travel vouchers on his behalf and that the reimbursements for false travel were being deposited into Jackson's checking account. One form of circumstantial evidence which demonstrated Jackson's intent was evidence that Jackson paid kickbacks to Flores for travel reimbursements. Several Marines testified about their own agreements with Flores to seek reimbursement for false travel vouchers. This group of Marines explained that after a false travel reimbursement was deposited in their bank accounts, Flores would demand a kickback of a certain amount depending on the size of the travel reimbursement. The Marines who were knowingly working with Flores to submit false travel vouchers, testified that they paid Flores kickbacks in exchange for his assistance. The Government, using financial records, then presented evidence that Jackson made several withdrawals from his bank account soon after receiving travel-related direct deposits and that Jackson then paid approximately twenty percent of several deposits to Flores.

　　　　The gravamen of Jackson's motion for judgment of acquittal is that one can draw alternative inferences in his favor from the circumstantial evidence at trial. For instance, with respect to the foregoing evidence, Jackson argues that he might have been paying Flores for reasons other than as Flores's share of their ill-gotten payments. See Mot. at 14-15. Jackson further contends that the timing of his payments can be explained by Flores's position, which enabled Flores to know when Jackson had recently been paid. Id. Jackson contends that Flores's manipulated him and exploited their "unusually strong bond," forged through a combat deployment. Id.

　　　　However, whether there are competing inferences that could be drawn from the evidence is inapposite at this stage. At this stage the Court draws all reasonable inferences in favor of the Government and resolves conflicts in favor of the jury's verdict. Alvarez-Valenzuela, 231 F.3d at 1201-02.

　　　　The jury heard evidence that Marines who knew about the false travel voucher scheme were paying kickbacks to Flores, that false travel vouchers were submitted in Jackson's name, and that Jackson received money from the federal government based on those false vouchers. Finally, the jury heard that Jackson repeatedly gave money to Flores around the times that he received reimbursement for false travel vouchers. Furthermore, Miguel Polanco testified that he overheard Jackson discussing the fact that another Marine owed Flores a portion of his travel reimbursement. Kevin Rea, who admits knowingly submitting false travel vouchers with Flores, testified that he discussed his payments to Flores with Jackson. Jackson and Flores repeatedly exchanged calls during the time between reimbursement deposits and Jackson's payments to Flores.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**              **'O'**

Additionally, reimbursements were directly deposited into Jackson's checking account for large amounts of money while Jackson stayed in less expensive accommodations. The amount of money deposited in Jackson's account was substantially larger than the amount he spent on travel for medical treatment. Despite Jackson's arguments regarding competing inferences that might be drawn from this evidence, the foregoing circumstantial evidence supports an inference that Jackson was paying Flores in exchange for his submission of false travel vouchers and that Jackson knew about and agreed to the submission of the false vouchers.

At this stage, the Court is required to draw all reasonable inferences in favor of the Government. The evidence at trial supported an inference that Jackson acted with the specific intent necessary for a conviction. Accordingly, Jackson's motion for judgment of acquittal is **DENIED**.

## III.  MOTION FOR A NEW TRIAL

### A.  Legal Standard

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir.1981).

### B.  Discussion

#### 1.  Additional Lay Witness Testimony

Defendant contends that his fifth amendment right to present a defense was violated by the Court's decision to prevent several lay witnesses from testifying. Jackson argues that additional lay witness testimony was "an integral part of Mr. Jackson's defense and would have demonstrated the severe impact the combat TBI had on Mr. Jackson's mental condition at the time of the charged offenses." Mot. at 18. Jackson contends that several additional witnesses, if permitted, would have testified to his difficulty completing tasks, memory, "cloudy thinking," emotional swings, overwhelmed appearance, and other lay observations of his general mental state.

This topic was discussed at length with the parties during trial. On August 9, 2016, the jury trial began, and on August 14, 2016, while trial was ongoing, Jackson filed a

**CRIMINAL MINUTES – GENERAL**  'O'

motion in limine seeking to admit the lay witness testimony at issue here. Dkt. 301. On August 15, 2016, the Government filed an opposition. Dkt. 302. On August 22, 2016, the Court denied defendant's motion in a written opinion. Dkt. 319. The Court ruled at the time that defendant's proffered testimony should not be admitted because there was a substantial risk that it would mislead or confuse the jury regarding Jackson's diminished capacity defense. Id. at 3. Specifically, the Court concluded that it was unclear how any of the proffered testimony was relevant to Jackson's specific intent to facilitate the submission of false travel vouchers. Jackson's diminished capacity defense depended upon evidence aimed at negating his specific intent. It could not, the Court concluded, rely upon lay observations of his general mental condition. The Court further concluded that admission of Jackson's proffered testimony carried a substantial risk of unfair prejudice to the Government, namely, that the jury may confuse defendant's diminished capacity defense with that of justification or excuse. See United States v. Twine, 853 F.2d 676, 678 (9th Cir. 1988) (observing that, "unlike insanity, [diminished capacity] is not an excuse").

A defendant is permitted to present a diminished capacity defense by showing that "he suffered from some [] mental or physiological condition which blocked formation of the requisite intent." United States v. Erskine, 588 F.2d 721, 722 (9th Cir. 1978); see also Twine, 853 F.2d at 678 (concluding the Erskine remains good law despite the passage, in 1984, of the passage of the Insanity Defense Reform Act). In Erskine, the court observed that "[t]he trial court has wide latitude in admitting or excluding psychiatric testimony on the question of a defendant's incapacity to form specific intent, and we do not hold that the court was required to exercise its discretion to admit testimony of the particular doctor in the instant trial." Id. (citing United States v. Demma, 523 F.2d 981, 986 (9th Cir. 1975)). In Erskine, the Ninth Circuit examined the diminished capacity defense where the defendant was convicted of submitting false information to a bank and described the diminished capacity defense as requiring "testimony concerning the defendant's incapacity to act for a specific purpose or to comprehend a causal connection between the information he submitted to the bank and its decision to lend him money. Id.

In this case, Jackson did not seek to admit psychiatric evidence tailored to his specific intent to aid the submission of false travel vouchers. Instead, Jackson offered lay witness observations outside the context of travel vouchers and running the gamut from Jackson "acting in an unreliable manner," to experiencing "weird mood swings," to getting angry when asked to recount the experience of being shot. Dkt. 301 Jacks Decl. ¶ 4. There does not appear to be any reason to reconsider the Court's prior ruling, let alone grant a new trial on this basis. Jackson's proposed witness testimony was not relevant to his specific intent and it carried substantial risk of unfair prejudice to the Government.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

Accordingly, Jackson's motion is appropriately denied to the extent it relies on the exclusion of Jackson's proposed lay witness testimony.

### 2. Dr. Marc Cohen's Testimony

On October 2, 2014, defendant filed a notice of expert witness regarding his proposed testimony by Dr. Tuller. Dkt. 122. Jackson offered Tuller's testimony regarding the causes and symptoms associated with TBI and PTSD as well as her review of Jackson's medical history and diagnoses for TBI and PTSD. Id. On June 23, 2015, the Government filed an ex parte application to exclude defendant's proposed expert testimony by Tuller or, in the alternative, to compel Jackson to submit to a mental health evaluation by Dr. Mark Cohen, whom the government would call to rebut Tuller's testimony. Dkt. 182. On July 8, 2015, the Court denied the Government's motion to exclude Tuller's testimony, but ordered defendant to submit to an eight-hour psychiatric evaluation by Cohen. During trial, both witnesses testified as anticipated. Tuller testified as a teaching witness in support of defendant's diminished capacity defense. Thereafter, Cohen testified regarding his evaluation of Jackson's mental capacity.

Defendant argues that his Fifth Amendment Right to Due Process was violated by the admission of Cohen's testimony as a rebuttal witness. Defendant does not appear to contend that Cohen's testimony was irrelevant or otherwise improper. Instead, defendant appears to challenge the order in which the witnesses were called. Jackson argues that Cohen offered his "opinions about Mr. Jackson's capacity, a fact not put at issue by Mr. Jackson's defense case," and thereby "gain a tactical advantage right before closing argument." Mot. at 20.

Jackson's argument is without merit. Jackson had ample notice that, if he presented psychiatric expert evidence of diminished capacity, the Government intended to rebut his diminished capacity defense by offering Cohen's testimony. Tuller testified that, generally, TBI and PTSD impact a person's ability to process information. The clear implication of Tuller's testimony, although she did not offer her own direct opinions as to Jackson's actual mental capacity, was that Jackson's undisputed TBI and PTSD could have caused him to have a diminished capacity. Accordingly, Cohen was properly permitted to offer testimony tending to show that Jackson did not *actually* have such diminished capacity that he could form the requisite specific intent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL    'O'

Defendant cites no authority for his apparent contention that the order of witnesses at trial requires a new trial. Nor does defendant explain how the order of witnesses "preponderates heavily against the verdict." Pimentel, 654 F.2d at 545.

In light of the foregoing, Jackson's motion for a new trial is **DENIED**.

## IV.  CONCLUSION

Defendant's motion for judgment of acquittal or a new trial is **DENIED**.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Deputy Clerk | CMJ | |